**TFWS, INC., t/a Beltway Fine Wine & Spirits, Plaintiff,**

v.

**William Donald SCHAEFER, et al., Defendants.**

**No. CIV.A. WDQ–99–2008.**

United States District Court, D. Maryland, Northern Division.

April 30, 2004.

Robert T. Shaffer, III, William J. Murphy, John J. Connolly, Murphy and Shaffer, Baltimore, MD, for Plaintiff.

Steven M. Sullivan, Meredyth Smith Andrus, State of Maryland Office of the Attorney General, J. Joseph Curran, III, Adelberg Rudow Dorf and Hendler LLC, Renee Nacrelli, Attorney General's Office, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

QUARLES, District Judge.

The United States Circuit Court for the Fourth Circuit has agreed with the district court that Maryland's post-and-hold liquor pricing system and its volume discount ban were established for the proper purpose of "fostering and promoting temperance" and "eliminating the undue stimulation of the sale of alcoholic beverages." *TFWS, Inc. v. Schaefer*, 325 F.3d 234, 236–237 (4th Cir.2003)("*TFWS II*"). The case was remanded to the district court for the determination of "whether, and to what extent, the regulatory scheme serves its stated purpose in promoting temperance." *Id.* The focus of this essentially factual inquiry was to be "Is the scheme effective?" *Id.* For the following reasons, the court has determined that the scheme is not effective and, accordingly, may not be enforced.

### I. Background

Plaintiff TFWS, Inc. owns and operates a large retail liquor store in Towson, Maryland, known as Beltway Fine Wine & Spirits. TFWS sued Maryland's State Comptroller and the Administrator of the Alcohol and Tobacco Tax Unit of the Comptroller's office (together, the "Comptroller"), seeking a declaration that Maryland's regulatory scheme violates § 1 of the Sherman Act.

Maryland's liquor licensing system has imposed "stiff restrictions" on how manufacturers and wholesalers price their products to retailers. *TFWS, Inc. v. Schaefer*, 242 F.3d 198, 202 (4th Cir.2001)("*TFWS I*"). Retailers, such as TFWS, are required to buy all the liquor they resell to consumers from licensed wholesalers. *Id.* at 202. In this case, TFWS has challenged Maryland's post-and-hold pricing system, Md. Ann.Code art. 2B, § 12–103(c) and COMAR 03.02.01.05, and the prohibition of volume discounts, Md. Ann.Code art. 2B, § 12–102(a), Md. Ann.Code art. 2B, § 12–103(b), and COMAR 03.02.01.05 B(3)(c).

Under the post-and-hold system, liquor wholesalers are required to file price schedules and proposed price changes that are made available to their competitors. By the fifth of each month wholesalers must post with the Comptroller a schedule of any price changes they intend to make for the following month. The Comptroller then makes these postings available to other wholesalers, who are given until the thirteenth of the month to file amended price schedules for new brands or new sizes of existing brands.... [W]hen one wholesaler posts a price change for an existing product, a competitor may match that price in a regular filing the following month. Under the post-and-hold system wholesalers must sell to retailers at the prices established in the posted schedule for at least the month following the posting.

*TFWS I*, 242 F.3d at 202 (citations omitted).

The volume discount ban prohibits wholesalers from discriminating in price "between one retailer and another retailer." *Id.* (citation omitted). Wholesalers are prohibited from offering discounts "of any nature" to liquor retailers. *Id.* at 203.

The Comptroller has authority to enforce the post-and-hold system and volume discount ban by revoking or suspending a

wholesaler's license and may also accept "an offer of compromise" (essentially, a fine). *Id.* The Comptroller also regularly publishes notices of violations of the pricing provisions, including the sanctions imposed, and distributes those notices to liquor wholesalers. *Id.*

The Fourth Circuit held that the Maryland statutes and regulations that require liquor wholesalers to post-and-hold their prices and that prohibit them from offering volume discounts constitute a *per se* violation of § 1 of the Sherman Act. *Id.* at 210.

The Fourth Circuit also held that summary judgment for the Comptroller had been improperly granted because there was a genuine issue of material fact about the effectiveness of the regulations. *TFWS II,* 325 F.3d at 242–43. A trial was necessary to determine whether Maryland had high liquor prices and whether those high prices had led to reduced consumption in Maryland. *Id.* In making these determinations, the district court would decide which party's evidence on economic theory was more persuasive and which party's data was entitled to greater weight. *Id.*

This court held a bench trial on October 8 to 10, 2003 and January 5 to 6, 2004. The parties submitted proposed findings of fact and conclusions of law.

## II.  Analysis

### A.  Sources of Price Data

The State relied on ACCRA[1] retail price data. Defendants' Proposed Findings of Fact and Conclusions of Law ("Def.Law") at ¶¶ 76–80.  The ACCRA

Cost of Living Index "measures *relative* price levels for consumer goods and services in participating areas."  ACCRA website, Interpreting the Index, *at* http://www.coli.org/method.asp (last visited 04/28/04) (emphasis in original).  ACCRA

> produces the Cost of Living Index to provide a useful and reasonably accurate measure of living cost differences among urban areas.  Items on which the Index is based have been carefully chosen to reflect the different categories of consumer expenditures.  Weights assigned to relative costs are based on government survey data on expenditure patterns for midmanagement households.  All items are priced in each place at a specified time and according to standardized specifications.

ACCRA website, About the Index, *at* http://www.coli.org/about.asp (last visited 04/28/04).

Areas included in the ACCRA surveys are those in which chambers of commerce or similar organizations have volunteered to participate. *Id.* The components of regional data vary.  For example, in 1996, ACCRA surveyed Maryland prices in Baltimore, Cumberland, Hagerstown and Worcester.  Pltf. Ex. 57 at 1–2.  In 1999, ACCRA surveyed Maryland prices in Baltimore and Cumberland. *Id.* at 6–9.  Although the Delaware ACCRA data include Wilmington and Dover, the data do not include either of the plaintiff's stores in Milltown and Claymont which comprise 30 to 35 percent of Delaware's retail liquor sales.  10/09/03 Tr. at 199 (testimony of David Trone).

Maryland ACCRA data do not include prices in the State's two largest counties,

---

1. ACCRA is a non-profit organization "promoting excellence in research for economic and community development."  ACCRA website, About ACCRA, *at* http://www.accra.org (last visited 04/21/04).  ACCRA produces the Cost of Living Index. *Id.* Previously, ACCRA was an acronym for the American Chamber of Commerce Researchers Association. *Id.* Because chambers of commerce are now only a minority of the membership, ACCRA is no longer an acronym. *Id.*

Prince George's and Montgomery; those prices are included in the Washington, D.C. data set. Pltf. Ex. 47. The number of respondents varies from quarter to quarter. ACCRA website, About the Index, *at* http://www.coli.org/about.asp (last visited 04/28/04). ACCRA data compare the prices of a single brand of beer[2], wine,[3] and spirits[4] in different regions. 10/09/03 Tr. at 63. The ACCRA data sets bear the following warning:

> Because the number of items priced is limited, it is not valid to treat percentage differences between areas as exact measures. Since judgment sampling is used in this survey, no confidence interval can be determined. Small differences, however, should not be construed as significant—or even as indicating correctly which area is the more expensive.

Pltf. Ex. 45 at 3660.

The plaintiff relies upon price data from its operation of a large alcohol retail outlet in Baltimore County, Maryland and two large retail outlets in Delaware, and published prices in two industry publications, the *Delaware Beverage Monthly* and the *Maryland Beverage Journal.* The plaintiff also relies upon anecdotal evidence of retailer and consumer behavior in Maryland, Delaware, and Pennsylvania.

B. Alcohol Pricing in Maryland and Delaware

1. ACCRA Spirits

▆▆ The Comptroller asserts that the regulations create artificially high liquor prices that reduce liquor consumption. 10/10/03 Overstreet Tr. at 17; *id.* at 114; *see also* Def. Law at ¶¶ 14, 38–39. The Comptroller introduced evidence that until June 1992, Delaware and Maryland had similar price posting regulations and quantity discount prohibitions. *See* Def. Law ¶ 84. From 1985 to 1989, Maryland liquor prices were lower than Delaware prices. *See* Def Ex. 45 at 6. ACCRA data shows that from 1990 to 2000— with the exception of 1991— Maryland liquor prices were higher than Delaware prices. *Id.* From 1991 to 1993, there was less than a 50 cent difference in Delaware and Maryland prices. *Id.* Beginning in 1993, ACCRA data shows that liquor prices in Maryland and Delaware began to diverge. *Id.* Delaware liquor prices ranged from just over $10 per gallon in 1993 to just under $9.00 per gallon in 1994, to about $9.00 per gallon in 1995, 96, and 97, to roughly $9.50 in 1999 and 2000. *Id.* During the same period, Maryland liquor prices were always above $10.00 per gallon and were at or above $11.00 per gallon in 1998, 99, and 2000. *Id.*

According to the ACCRA data, in 1998, a gallon of liquor in Maryland-including the alcohol excise tax but excluding sales tax-cost $10.93; in Delaware, the price of a gallon of liquor-including the alcohol excise tax-was $9.44. *Id.* at 8. Exclusive of alcohol excise taxes, ACCRA data indicate that liquor prices are 15 to 16 percent lower in Delaware than Maryland. *Id.*

---

**2.** Since the first quarter of 2000, ACCRA has surveyed the prices of six 12 ounce containers of Heineken beer; previously, prices for Budweiser and Miller Lite were surveyed. Def. Ex. 43Q.

**3.** Since the fourth quarter of 1997, ACCRA has surveyed prices for a 1.5 liter bottle of Livingston Cellars or Gallo Chablis or Chenin Blanc wine. From the fourth quarter of 1990 through the third quarter of 1997, ACCRA surveyed prices for the Gallo brand wines. From the fourth quarter 1990 through the third quarter 1991, ACCRA surveyed prices for Gallo Sauvignon Blanc. Through the third quarter of 1990, ACCRA surveyed prices for Paul Masson Chablis. Def. Ex. 43R.

**4.** From 1990 to 2003, ACCRA surveyed prices for a 750 ml bottle of J & B Scotch. Def. Ex. S.

By contrast, the plaintiff introduced evidence from which the following comparisons of 2003 case prices of 750 ml bottles of J & B Scotch (the brand ACCRA surveys) published in the *Delaware Beverage Monthly* and the *Maryland Beverage Journal* were made:

|  | Maryland | Delaware (No Discount/Quantity Discount) |
|---|---|---|
| June | 191.92 | 209.94/177.54 |
| July | 197.92 | 211.08/191.88 |
| August | 191.92 | 212.94/179.94 |
| September | 197.92 | 212.94/179.94 |
| October | 179.92 | 211.08/179.88 |
| November | 197.92 | 211.08/191.88 |
| December | 191.92 | 211.08/191.88 |

Pltf. Ex. 94.

The preceding chart indicates that the Maryland published wholesale prices for the ACCRA brand liquor were uniformly lower than the Delaware published wholesale prices. Moreover the lowest Maryland published price— $179.92 per case— was merely 20 cents per bottle more expensive than the lowest (i.e., quantity discounted) Delaware price of $177.54.

Maryland prices of the ACCRA brand of liquor are not significantly higher than Delaware prices.

### 2. ACCRA Wine

The Comptroller introduced evidence that from 1985 to 1991—with the exception of 1990 when prices were the same— ACCRA data show that wine prices in Maryland were lower than in Delaware. *Id.* at 9. From 1992 to 2000, wine prices in Delaware were lower than in Maryland. *Id.* The Comptroller also introduced evidence that from 1994 to 1999, liquor prices in Dover and Wilmington, Delaware were lower than in Baltimore, Cumberland, and Hagerstown, Maryland. *Id.* at 11.

By contrast, the plaintiff introduced evidence from which the following comparisons of 2003 prices of 1.5 liter Livingston Cellars Chablis Blanc (the brand ACCRA surveys) published in the *Delaware Beverage Monthly* and the *Maryland Beverage Journal* were made:

|  | Maryland | Delaware (No Discount/Quantity Discount) |
|---|---|---|
| June | 23.96 | 29.94/23.94 |
| July | 30.00 | 29.94/23.94 |
| August | 23.96 | 29.94/23.94 |
| September | 30.00 | 29.94/23.94 |
| October | 23.96 | 29.94/23.94 |
| November | 30.00 | 29.94/23.94 |
| December | 23.96 | 29.94/23.94 |

Pltf. Ex. 94.

The preceding chart indicates that the Maryland published prices for the ACCRA brand of wine were cheaper than the Delaware published prices half the time. Moreover, the lowest (i.e., quantity discounted) Delaware published price was just two cents cheaper per case than the lowest published Maryland price.

Maryland prices of the ACCRA brand of wine are not significantly higher than Delaware prices.

### 3. Other Brands

The plaintiff introduced the testimony of David Trone, the owner of TFWS. Trone holds an MBA from the Wharton School of Finance of the University of Pennsylvania. 10/09/03 Tr. at 182. While at the University, he developed the concept of marketing alcohol beverages in "a large store with a very, very broad selection, very aggressive, low prices ... [in a] bright, clean store[.]" *Id.* at 183. Trone owns a 20,000 square foot liquor store in Baltimore County, Maryland, a 50,000 square foot store in Claymont, Delaware, and an 11,000 square foot store in Milltown, Delaware. *Id.* at 184–186. Trone and his family own 31 liquor stores in Maryland, Delaware, New Jersey, Virgi-

nia, North Carolina, and South Carolina. *Id.* at 187.

In 1996, Trone entered the liquor business in Maryland. *Id.* at 190. He learned that the industry had devised several mechanisms to evade the Comptroller's regulations. For example, although quantity discounts are forbidden, some wholesalers will provide a free case of liquor to retailers who buy 10 cases. *Id.* at 190.

Retailers are also able to avoid the effects of the quantity discount ban by "bridge buying." Although published retail prices fluctuate in Maryland, the fluctuations are predictable. 10/10/03 Tr. at 27. Wholesalers advise retailers of their "post off plans;" i.e., the retailers are told what future prices will be and when price changes will go into effect. *Id.* at 27–28. Accordingly, by planning their purchases, all retailers can buy large amounts of alcohol when costs are lower so that they do not have to purchase in months when costs are higher. The items that are purchased at the lower prices supply the inventory for those months when wholesale costs are higher, thus bridging the inventory until the costs return to a lower price. *Id.*

Delaware repealed its quantity discount ban and the requirement that wholesalers hold their posted prices for a month. 10/10/03 Trone Tr. at 36–38 (quantity discount repealed in Delaware); Def. Ex. 48 (hold requirement). Accordingly, both parties used Delaware liquor prices as a control group to gauge the effect of the regulations on Maryland liquor prices. Pltf. Ex. 93; Def. Ex. 45.

The plaintiff produced the monthly case prices from June through December 2003 for 38 top-selling brands and two ACCRA brands. Pltf. Ex. 94; Trone Declaration at ¶ 13. The following chart compares the lowest published [5] case prices in Maryland, the lowest Delaware published case prices, and the lowest Delaware quantity discount case prices during that period for those brands.

### Maryland–Delaware Price Comparison
### June through December 2003

| | | Lowest Md. Published | Lowest Del. Published | Lowest Del. Discount |
|---|---|---|---|---|
| 1. | Livingston Cellars Chablis Blanc | 23.96 | 29.94 | 23.94 |
| 2. | J & B Scotch | 179.92 | 209.94 | 177.54 |
| 3. | Glen Ellen Chardonnay | 39.98 | 51.96 | 41.94 |
| 4. | Sutter Home Chardonnay | 43.98 | 60.98 | 44.96 |
| 5. | Woodbridge Mondavi Sauv Blanc | 41.95 | 53.94 | 41.94 |
| 6. | Cavit Pinot Grigio | 47.94 | 68.94 | 51.96 |
| 7. | Concha Y Toro Frontera Cab Merlot | 27.96 | 45.96 | 31.98 |
| 8. | J Lohr Riverstone Chardonnay | 95.99 | 119.88 | 99.96 |
| 9. | Meridian Chardonnay Santa Barbara | 71.99 | 107.15 | 71.93 |
| 10. | Woodbridge Mondavi Chardonnay | 59.95 | 71.90 | 51.96 |
| 11. | Beringer Founders Cabernet | 83.95 | 102.55 | 79.97 |
| 12. | J Lohr Cabernet Seven Oaks | 103.95 | 131.88 | 119.88 |
| 13. | Blackstone Merlot California | 83.95 | 101.88 | 87.96 |
| 14. | Ravenswood Vintners Zinfandel | 79.97 | 102.72 | 83.88 |
| 15. | Lindemans Chardonnay Bin 65 | 59.99 | 79.92 | 59.88 |
| 16. | Rosemount Chiraz | 87.96 | 107.88 | 78.92 |
| 17. | Almaden Chardonnay | 35.96 | 63.96 | 39.96 |

**5.** Published case prices are the actual prices wholesalers charge to retailers in Maryland and Delaware.

| | | | | |
|---|---|---|---:|---:|---:|
| 18. | Carlo Rossi Paisano | 26.80 | 34.64 | 29.96 |
| 19. | Beringer White Zinfandel | 45.06 | 69.94 | 56.25 |
| 20. | Seagram's 7 | 65.94 | 100.74 | 71.94 |
| 21. | Early Times | 65.96 | 89.28 | 68.94 |
| 22. | Jack Daniels Black | 165.52 | 186.93 | 173.40 |
| 23. | Jim Beam | 101.94 | 137.94 | 107.94 |
| 24. | Southern Comfort 76 | 104.96 | 127.96 | 110.96 |
| 25. | Canadian Club | 89.94 | 122.94 | 89.94 |
| 26. | Canadian Mist | 62.96 | 90.12 | 65.94 |
| 27. | Beefeater | 137.96 | 179.94 | 143.94 |
| 28. | Burnett's Gin | 53.95 | 76.97 | 49.96 |
| 29. | Gordon's Gin | 65.35 | 100.14 | 71.94 |
| 30. | Bacardi Light | 89.96 | 108.96 | 92.28 |
| 31. | Capt. Morgan's Spiced Rum | 110.96 | 125.94 | 113.94 |
| 32. | Dewar's | 161.96 | 212.94 | 181.14 |
| 33. | Absolut | 161.96 | 185.94 | 167.94 |
| 34. | Ketel One | 173.96 | 199.33 | 170.97 |
| 35. | Stolichnaya 80 | 158.35 | 179.94 | 161.94 |
| 36. | Burnett's Vodka | 49.96 | 72.47 | 56.94 |
| 37. | Skyy Vodka | 125.94 | 167.94 | 125.94 |
| 38. | Smirnoff 80 | 95.94 | 113.94 | 95.94 |
| 39. | Wolfschmidt Vodka | 52.14 | 74.94 | 58.14 |
| 40. | Kahlua | 155.92 | 203.88 | 179.88 |

Pltf. Ex. 94.

Although the Comptroller argues that the regulations maintain artificially high prices, of these 40 products, the lowest Maryland published price was always lower than the lowest Delaware published price. *Id.* Moreover, the lowest Maryland published price was lower than the lowest Delaware quantity discount price for 67.5 percent of the listed products. *Id.* Of the 10 products whose lowest Maryland published prices were higher than the lowest Delaware quantity discount prices, the case price differences ranged from $7.99 for Woodbridge Mondavi Chardonnay to one cent for Woodbridge Mondavi Sauvignon Blanc. *Id.*[6] Because these are differences among case prices, the $7.99 difference in Woodbridge Mondavi Chardonnay is a difference of 67 cents per bottle. *Id.;* Pltf. Ex. 93 at 4 (listing 12 units per case of Woodbridge Mondavi Chardonnay).

Plaintiff's price data for the same 2,637 brands that are sold in each of Trone's Maryland and Delaware stores yield similar results. *Compare* Pltf. Ex. 93 *with* pltf. Ex. 94. Maryland published case prices were less expensive than Delaware published case prices for 84.5% of the brands. Pltf. Ex. 93 at 32. Maryland published prices were less expensive than Delaware discounted prices for 53.6% of the brands. *Id.* These data show that Maryland liquor prices are not generally higher than in Delaware.

Anecdotal evidence of cross-border sales and marketing also establish that Delaware retail liquor prices are higher than Maryland retail prices. The plaintiff has submitted anecdotal evidence that residents of Delaware cross the border into Maryland to purchase alcohol at lower prices. 10/10/03 Trone Tr. at 54.[7] The willingness of Delaware shoppers to travel

6. Four of the 10 Delaware brands that had cheaper quantity discount prices had price differences ranging from one cent to 11 cents per case. Pltf. Ex. 94.

7. Neither party disputes that cross-border sales are driven by pricing; accordingly the phenomenon is circumstantial evidence that Maryland prices are lower than Delaware prices. Interestingly, Philadelphians drive to

to Maryland to purchase liquor indicates that liquor is cheaper in Maryland.[8]

### III. Conclusion

The Court concludes that the post-and-hold and quantity discount ban regulations do not increase Maryland liquor prices.[9] Accordingly, the regulations are ineffective and a *per se* violation of the Sherman Act, and the Comptroller will be enjoined from enforcing them.[10]

Delaware in search of less expensive alcohol. 10/10/03 Trone Tr. at 52–53. Trone's marketing strategy accounts for this. *Id.* Trone spends $350,000 a year advertising his Delaware stores in the Philadelphia market in an attempt to increase his cross-border sales. *Id.*

8. Thomas R. Overstreet, Ph. D., testified as an expert in antitrust economics, industrial organizations, market price dynamics, and effects of vertical restraints on pricing. 10/10/03 Overstreeet Tr. at 10–11. Dr. Overstreet testified that liquor stores in Cecil County, Maryland, which borders Delaware, appear to locate near the border in order to attract Delaware customers. 10/10/03 Overstreet Tr. at 58.

9. Thus, there is no reason to determine whether those prices affect consumption. There is a general consensus that there is some relationship between alcohol price and alcohol demand. Def. Ex. 1 at 2, ¶ 15; 10/10/03 Overstreet Tr. at 114. This relationship can be expressed in terms of price elasticity, a figure that expresses the correlation between increases in price and decreases in consumption. Def. Ex. 22. The Comptroller's expert, Frank J. Chaloupka, Ph. D., who testified as an expert in health economics and alcohol policy, produced the following price elasticities for the following products:

| | |
|---|---|
| Beer: | 0.3 |
| Wine: | 1.0 |
| Spirits: | 1.5 |

Def. Ex. 22.
Based on these elasticities, a 10% price increase in the price of all alcohol would reduce beer consumption by 3%, wine consumption by 10 %, and Spirit consumption by 15 %. *Id.*

Three significant non-price factors also influence drinking behavior: 1) substitution between brands and types of alcohol; 2) non-price competition, which attempts to increase the products market by creating new demand for a product; and 3) the convenience of purchasing alcohol, which is a function of the number of retail outlets for the product. 10/10/03 Overstreet Tr. at 21–22 (regulations insulate small alcohol retailers from larger competitors, creating more alcohol outlets); *see also* 10/08/03 Tr. at 223; Pltf. Ex. 42.

Accordingly, in theory the regulations can reduce consumption only if they increase liquor prices in a manner that is not off-set by non-price influences. Interestingly, beer consumption in Maryland has decreased despite its exclusion from the regulations. 10/10/03 Overstreet Tr. at 31–34. This indicates that decreased consumption is not dependent on the regulations.

Dr. Overstreet's study of California and Nebraska where similar regulations have been repealed, indicates that there was no significant increase in per capita consumption. *See* 10/10/03 Overstreet Tr. at 34–48; Pltf. Ex. 42 at 15–17.

10. In its post-trial Proposed Findings of Facts and Conclusions of Law, TFWS argues that the Court should conclude that it is a "prevailing party" and award it attorney's fees under Title 15 U.S.C. § 26. Plaintiff's Proposed Findings of Fact and Conclusions of Law at 48–49. TFWS has conceded, however, that it has not filed the proper motion, or memorandum, for such fees as required by Local Rule 109.2 (D.Md.). *Id.* Accordingly, the matter is not yet ripe for decision. *Porous Media Corp. v. Pall Corp.*, 201 F.3d 1058, 1059 (8th Cir.2000)(when request for sanctions and attorney's fees was made in a brief, proper course was to wait until separate motion was filed and opposing party had opportunity to respond).

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this 30th day of April 2004, ORDERED that:

1. Md.Code Ann., art. 2B, § 12–103(c) and those portions of COMAR 03.02.01.05 that describe and implement the post-and-hold system, are DECLARED unlawful as a *per se* violation of § 1 of the Sherman Act;

2. Those portions of Md.Code Ann., art. 2B, § 12–102(a), Md.Code Ann., art. 2B, § 12–103(b) and COMAR 03.02.01.05 B(3)(c) which prohibit volume discounts are DECLARED unlawful as a *per se* violation of § 1 of the Sherman Act;

3. Defendants BE, and hereby are, PERMANENTLY ENJOINED from enforcing, maintaining, aiding or abetting the post-and-hold system as currently constituted under Md.Code Ann., art. 2B, § 12–103(c) and COMAR 03.02.01.05;

4. Defendants BE, and hereby are, PERMANENTLY ENJOINED from enforcing, maintaining, aiding or abetting the volume discount ban, as currently constituted under Md.Code Ann., art. 2B, § 12–102(a), Md.Code Ann., art. 2B, § 12–103(b) and COMAR 03.02.01.05 B(3)(c).

5. The Clerk of the Court shall MAIL copies of this Order and the Memorandum Opinion to Defendants and the Plaintiff.